(June 14, 2001)

■ In the Matter of ANONYMOUS, Respondent, v LEROY CAR-MICHAEL, Appellant. [727 NYS2d 408] —Order, Supreme Court, Bronx County (Howard Silver, J.), entered February 1, 2001, which, after a trial pursuant to Mental Hygiene Law § 9.35, directed that petitioner be released from the Bronx Psychiatric Center (BPC), unanimously reversed, on the law, without costs, and appellant's motion pursuant to CPLR 4404 (a) for a judgment notwithstanding the verdict ordering petitioner's retention granted.

Petitioner has been in and out of mental hospitals since 1974. He has been diagnosed as suffering from Schizoaffective Disorder, Bipolar Type and has been treated with Haldol, an antipsychotic medication. In addition to mental illness, petitioner suffers from diabetes (insulin-dependent), hypertension and bronchial asthma. In 1997, petitioner was discharged from BPC with follow-up care to be provided by Ginsburg Outpatient Clinic. His treatment with Haldol was successful but he stopped complying with the outpatient treatment in September 1999.

On November 8, 1999, petitioner threatened his former wife and was brought to St. Barnabas Hospital. His treating doctor noted that the petitioner had stopped taking his medication two to three months prior to his admission and had become increasingly disorganized and paranoid. He was incoherent and agitated and acted so aggressively that he could not be physically examined. Records from this hospitalization indicate that petitioner was found to be suffering from fixed false beliefs, was irritable, noncompliant with treatment and medication, and had poor insight into his mental illness or need for treatment.

He was transferred to BPC on February 22, 2000. During

this hospitalization, petitioner frequently attacked the staff and occasionally needed additional medication to control his loud, agitated or bizarre behavior. He was ultimately transferred to a specialized secure care ward at the center. The records also indicate that petitioner had trouble maintaining his personal hygiene, which only improved when he took court-ordered medication. Petitioner exhibited grandiose delusions, referring to himself as a scientist, PhD, psychologist, and a lawyer. His delusions also had paranoid aspects to them. Petitioner did not believe he was mentally ill and refused medication. This resulted in court authorization to treat him with an injectable form of Haldol. This improved his condition. He refused, however, to take the mood stabilizer, valporic acid. In addition, he refused to allow the medical staff to perform routine tests to monitor his diabetes and hypertension.

On October 18, 2000, the court ordered petitioner retained at BPC for a period not to exceed one year pursuant to Mental Hygiene Law § 9.33 upon a finding that he was mentally ill, that inpatient care and treatment were essential for his welfare and that he was unable to understand the need for such care and treatment. Petitioner sought rehearing and review of that order pursuant to Mental Hygiene Law § 9.35. The following evidence was adduced at the subsequent trial.

Respondent introduced the testimony of both petitioner and a forensic psychiatric expert. Petitioner did not call any witnesses or present other evidence. The parties stipulated to the admissibility of petitioner's clinical records, subject to evidentiary objections.

Respondent's physician testified that he examined petitioner on December 28, 2000. Petitioner, however, abruptly ended the interview after only 25 minutes, as the doctor began to explore petitioner's delusional beliefs. After reviewing petitioner's medical records and speaking with his physicians and family, respondent's doctor opined that petitioner suffers from Schizoaffective Disorder, Bipolar Type. He further testified that the improvement in petitioner's condition was solely the result of the hospital environment which kept his behavior in check. He re-emphasized that even in the hospital, petitioner had become agitated, threatening and assaultive, requiring an emergency injection of Haldol and movement to a secure ward. The doctor concluded that the main reason that petitioner has been in and out of hospitals for the past 20 years is because he does not follow up with outpatient treatment. When he stops taking his medications, he deteriorates, becoming agitated, irritable, paranoid and unable to care for himself. The doctor testified

that inpatient hospitalization was absolutely essential for petitioner's welfare. Finally, the doctor testified that if released after trial, petitioner would deteriorate and would be a danger to himself and others.

Petitioner, called by respondent as an adverse witness, testified that he is not mentally ill. He attributed his numerous hospitalizations to the doctors lying about him and the police abusing him. He testified that he failed to comply with the prescribed medications outside of the hospital because no one would supply them due to his ethnicity. He testified that he does not believe himself to be in need of medications or treatment.

Petitioner was found to be mentally ill, but it was concluded that continued retention was not essential to his welfare. Thereafter, respondent moved for judgment notwithstanding the verdict, which was denied. We reverse, and grant respondent's motion.

In order for a hospital to retain a patient for involuntary psychiatric care under New York law, the hospital must establish, "by clear and convincing evidence, that the patient is mentally ill and in need of continued, supervised care and treatment, and that the patient poses a substantial threat of physical harm to himself and/or others" (*Matter of Ford v Daniel R.*, 215 AD2d 294, 295; *Matter of Seltzer v Grace J.*, 213 AD2d 412). The testimony of respondent's doctor, in conjunction with his clinical records and his own testimony, support a finding that all three of these elements have been met (*Matter of Ford, supra*; *Matter of Consilvio v Diana W.*, 269 AD2d 310; *Matter of Donaldson v Daley*, 206 AD2d 298). Throughout petitioner's medical history, his noncompliance with a proscribed treatment plan has repeatedly led to psychotic decompensations marked by personal neglect and dangerous and aggressive behavior. He has threatened his family with a weapon and neglected or refused to accept treatment for his medical conditions. He has neglected his personal hygiene. Further, because he denies his mental illness, petitioner does not seek or accept treatment on a voluntary basis. Indeed, even within the hospital setting, petitioner has experienced decompensations due to a refusal of treatment and has become aggressive and assaultive. There is no rational interpretation of the evidence presented which would support the finding that the petitioner is not in need of involuntary hospitalization (*see, Cohen v Hallmark Cards*, 45 NY2d 493, 499; *Matter of Donaldson, supra*). Concur—Sullivan, P. J., Nardelli, Mazzarelli, Rubin and Saxe, JJ.