■ In the Matter of MARIE H. JULIE M., Respondent; MENTAL HYGIENE LEGAL SERVICE, on Behalf of MARIE H., Appellant. [811 NYS2d 708]—

In a proceeding pursuant to Mental Hygiene Law article 81 to appoint a guardian for the person and property of Marie H., an alleged incapacitated person, the Mental Hygiene Legal Service, on behalf of Marie H., appeals from an order and judgment (one paper) of the Supreme Court, Westchester County (Rosato, J.), entered June 7, 2004, which, inter alia, after a hearing, granted the petition.

Ordered that the order and judgment is affirmed, without costs or disbursements.

At issue here is whether the testimony of Dr. Anthony Stern as to Marie H.'s mental state was admissible in the instant proceeding. Marie H. claims that Dr. Stern's testimony was inadmissible as violative of the physician-patient privilege (see CPLR 4504 [a]).

The petition alleged that "[f]rom September 5, 2003 until October 31, 2003 Marie was a patient at Westchester County Medical Center/Behavioral Health Center . . . resulting from an involuntary admission through the Mobile Crisis Team." On September 5, 2003, Dr. Anthony Stern examined Marie H. in her apartment as part of a "crisis team" operating pursuant to Mental Hygiene Law § 31.27. Dr. Stern diagnosed Marie H. as suffering from schizoaffective disorder with "manic and depressive ailment" and "severe mood swings in association with both hallucinations and . . . paranoid delusions." Dr. Stern and his "teammates" concluded that it was necessary to hospitalize Marie H. involuntarily that same day. Dr. Stern did not prescribe treatment or otherwise participate in her treatment at the hospital and was unaware of the nature of her treatment.

On October 31, 2003, Marie H. was discharged from Westchester County Medical Center to her residence and the instant proceeding was commenced based upon the petitioner's verified petition and the affidavit of Dr. Stern.

At the hearing on the petition, the petitioner, who is the sister of Marie H., bore the burden of proving by clear and convincing evidence that Marie H. was incapacitated (see Mental Hygiene Law § 81.12 [a]). The rules of evidence apply to proceedings pursuant to Mental Hygiene Law article 81, and Mental Hygiene Law § 81.12 (b), which permits the court to waive the rules of evidence "for good cause shown," only applies in uncontested proceedings (see Matter of Rosa B.-S. [William M.B.], 1 AD3d

355 [2003]). In the instant case, Mental Hygiene Legal Service, appearing on behalf of Marie H. (hereinafter the appellant), contested the petition and moved to strike Dr. Stern's affidavit and preclude his testimony based upon the physician-patient privilege. The petitioner opposed the motion on the ground that Dr. Stern was not a treating physician. The application was denied. After Dr. Stern and the petitioner testified and Marie H. presented no evidence, the petition was granted.

CPLR 4504 (a) provides that a person authorized to practice medicine "shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity" unless the patient waives such privilege. The physician-patient privilege is "purely a legislative creation" with a number of exceptions (*People v Sinski*, 88 NY2d 487, 491 [1996]; *see Matter of Nathan R.*, 184 Misc 2d 666, 668 [2000]). The burden is on the party asserting the privilege to show the existence of circumstances justifying its recognition (*see Williams v Roosevelt Hosp.*, 66 NY2d 391, 397 [1985]; *Matter of Nathan R., supra*). The privilege is waived if the alleged incapacitated person affirmatively places his or her medical condition in issue (*see Matter of Rosa B.-S., supra*; *Matter of Tara X.*, NYLJ, Sept. 18, 1996 at 27, col 1 [Sup Ct, Suffolk County, Prudenti, J.]).

In the instant case, Marie H. did not affirmatively place her medical condition in issue. She presented no evidence in her own behalf. Her contention is that Dr. Stern's testimony was inadmissible pursuant to the physician-patient privilege, and consequently the petitioner failed to submit sufficient competent evidence to satisfy her burden of proof. We disagree.

The testimony of a treating physician is inadmissible in a proceeding pursuant to Mental Hygiene Law article 81 pursuant to the physician-patient privilege (*see Matter of Rosa B.-S., supra*). However, Dr. Stern was not Marie H.s' treating physician. He was part of a mobile crisis team whose function was to provide "[c]risis outreach services" defined as emergency psychiatric services including "evaluation, assessment and stabilization services; crisis reduction services; referral services; and other psychiatric emergency services" (Mental Hygiene Law § 31.27 [a] [3]).

Mental Hygiene Law § 31.27 was enacted as part of legislation to establish "Comprehensive Psychiatric Emergency Programs" in the state (*see* Mem of Assemblywoman Connelly, Governor's Mem approving L 1989, ch 723, 1989 Legis Ann, at 313). Simultaneously with that provision, the Legislature

enacted Mental Hygiene Law § 9.40 which permits involuntary retention of a patient in a comprehensive psychiatric emergency program. Laws of 1989, chapter 723 also amended Mental Hygiene Law § 9.57 to provide that a "physician who has examined a person in a comprehensive psychiatric emergency program" is authorized to request the involuntary removal to a mental hospital of a person who appears to have mental illness "for which immediate care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others."

As part of that statutory scheme, the Legislature amended Mental Hygiene Law § 9.59 (a) to provide that "any employee of a licensed comprehensive psychiatric emergency program, specially trained in accordance with standards developed by the commissioner, who transports a person to a hospital" is not liable for damages to the person transported to the hospital unless gross negligence is established (L 1989, ch 723, § 8). The Crisis Team was authorized to remove Marie H. to a hospital against her will and did in fact do so. Its conduct constituted a State action analogous to an arrest for which the State enjoys a qualified immunity from liability under 42 USC § 1983 (*see Glass v Mayas,* 984 F2d 55, 58 [1993]). The nature of this relationship bears little resemblance to the physician-patient relationship which is created "when professional services are rendered and *accepted*" by the patient pursuant to an express or implied contract (*Heller v Peekskill Community Hosp.,* 198 AD2d 265 [1993] [emphasis added]).

At a hearing to determine whether a patient may be retained in a hospital for involuntary psychiatric care, the hospital "must establish by clear and convincing evidence that the patient is mentally ill and in need of further care and treatment" (*Matter of John P.,* 265 AD2d 559 [1999]; *see Matter of Anonymous v Carmichael,* 284 AD2d 182 [2001]). The hospital's proof generally includes testimony by a psychiatrist or psychiatrists (*see Matter of Consilvio,* 8 AD3d 22, 24 [2004]). As a nontreating psychiatrist, Dr. Stern's testimony would have been admissible in a hearing to determine whether further involuntary hospitalization was warranted (*see Ughetto v Acrish,* 130 AD2d 12, 15 [1987]). Applying the physician-patient privilege to such testimony would make it difficult to provide involuntary treatment for mental illness and would be contrary to the legislative scheme.

In any event, the unrebutted testimony of the petitioner, inter alia, describing Marie H.'s delusional behavior and her inability to manage her own affairs satisfied the petitioner's burden pur-

suant to Mental Hygiene Law § 81.12 (a) (*see Matter of Rosa B.-S., supra*).

The appellant's remaining contention is without merit. H. Miller, J.P., Cozier and Goldstein, JJ., concur.

Skelos, J., concurs and votes to affirm the order and judgment, with the following memorandum: I agree with the majority that the unrebutted testimony of the petitioner presented clear and convincing evidence of Marie H.'s inability to provide for her personal needs and property management. As such, the petitioner met her evidentiary burden under Mental Hygiene Law § 81.12 for the appointment of a guardian. However, I do not agree with the majority's conclusion that the testimony of the crisis team psychiatrist who initially evaluated the alleged incapacitated person (hereinafter the AIP) was properly admitted. In my opinion, such testimony violated the physician-patient privilege (*see* CPLR 4504 [a]).

The majority argues that since Dr. Stern did not prescribe medication or otherwise participate in the treatment of the AIP after her involuntary hospitalization, he qualifies as a nontreating physician who can testify without violating the privilege. I do not agree. Dr. Stern was attending the AIP in a professional capacity when he observed and evaluated her as part of a crisis team. This assessment resulted in her involuntary hospitalization and necessarily involved medical determinations protected by the privilege. It does not matter that the physician-patient relationship arose from the "exigencies of the patient's situation" (*Meyer v Supreme Lodge, Knights of Pythias,* 178 NY 63, 69 [1904], *affd* 198 US 508 [1905]). One who is treated by a physician, even against her will, becomes a patient of that physician by operation of law (*id.* at 67). "The relation of physician and patient, so far as the statute under consideration is concerned, springs from the fact of professional treatment, independent of the causes which led to such treatment. An examination made in order to prescribe establishes the same relation" (*id.; see also People v Decina,* 2 NY2d 133, 142 [1956]).

The physician-patient privilege applies to information obtained by a medical professional for *diagnostic* purposes as well as treatment (*see Hughson v St. Francis Hosp. of Port Jervis,* 93 AD2d 491, 499 [1983]). As the court explained in *Hughson* (*supra*), the test as to what constitutes privileged information includes "not only communications received from the lips of the patient but such knowledge as may be acquired from the patient [herself], from the statement of others who may surround [her] at the time, *or from observation of [her] appearance and symptoms*" (*id.* at 498, quoting *Edington v Mutual Life Ins. Co. of N.Y.,* 67 NY 185, 194 [1876] [emphasis added]).

It is obvious that Dr. Stern reached his conclusions regarding the AIP's need for hospitalization based on his observations of the AIP's appearance and symptoms on September 5, 2003. His diagnosis of the AIP as a paranoid individual suffering from a schizoaffective disorder necessarily required an application of his medical skills and knowledge and were not the mere observations of a layperson. Accordingly, Dr. Stern's role as a diagnosing medical professional gave rise to a physician-patient relationship with the AIP, and the statutory privilege of CPLR 4504 (a) attached to his professional observations. As the Court of Appeals remarked in *Dillenbeck v Hess* (73 NY2d 278, 284 n 4 [1989]), "[t]hough a physician is not precluded from testifying concerning ordinary incidents and facts of a person's medical history that are obvious to those without professional training, it is universally acknowledged that any medical information acquired by the physician through the application of professional skill or knowledge is protected by the statute."

Courts that have considered the physician-patient privilege within the context of contested article 81 proceedings such as the one under review have determined that medical testimony violative of the privilege is not admissible in the absence of a waiver (*see Matter of Rosa B.-S. [William M.B.],* 1 AD3d 355, 356 [2003]; *Matter of Seidner,* NYLJ, Oct. 8, 1997, at 28, col 4 [Sup Ct, Nassau County, Rossetti, J.]; *Matter of Tara X.,* NYLJ, Sept. 18, 1996, at 27, col 1 [Sup Ct, Suffolk County, Prudenti, J.]; *Matter of Higgins [England],* NYLJ, Oct. 6, 1995, at 27, col 2 [Sup Ct, New York County, Ramos, J.]). As Presiding Justice Prudenti pointed out in *Matter of Tara X.* (*supra*), once a guardianship proceeding has become adversarial, the limited exception to the physician-patient privilege carved out by Mental Hygiene Law § 81.09 (d) must give way to the evidentiary and due process concerns of the AIP. "To hold otherwise would afford respondents in Article 81 proceedings a modicum of due process which falls below that afforded their counterparts in other legal proceedings and would effectively nullify the heavy quantum of proof imposed upon the petitioners seeking guardianship over non-consenting persons under § 81.12 (a)" (*id.* at 3). This position is consistent with the traditionally broad and liberal construction given the privilege in order to achieve its policy objectives, and the narrow construction given the few well-defined legislative limitations thereto (*see Matter of Grand Jury Investigation in N.Y. County,* 98 NY2d 525, 532 [2002]; *People v Sinski,* 88 NY2d 487, 492 [1996]; *Dillenbeck v Hess, supra* at 290 n 6; *Matter of Grand Jury Investigation of Onondaga County,* 59 NY2d 130, 135-136 [1983]). (It is worth noting that the exception created by Mental Hygiene Law

§ 81.09 [d] contemplates both the appointment of a court evaluator pursuant to Mental Hygiene Law § 81.09 [b] and an appropriate motion by an evaluator allowing for the inspection or disclosure of privileged information. Neither precondition was met in this case.)

While I agree with the majority that testimony from a physician is helpful in proceedings of this nature, Mental Hygiene Law article 81 does not require medical testimony for the appointment of a guardian (*see* Mental Hygiene Law § 81.02 [a] [2]; § 81.03 [e]; *Matter of Rosa B.-S., supra* at 356; *Matter of Harriet R.,* 224 AD2d 625, 626 [1996]; *Matter of Kustka,* 163 Misc 2d 694, 699-700 [1994]). Contrary to the majority's contention, it is irrelevant that the privilege as asserted here impedes the disclosure of legally pertinent information that would assist the court in its determination of the AIP's mental capacity. (It may reasonably be argued that there is an anomaly in a statute that allows the court to appoint an evaluator who may breach the privilege upon application pursuant to Mental Hygiene Law § 81.09 [d], yet provides no corresponding mechanism for the court to ascertain the same relevant information sua sponte. Nevertheless, it is not for the court to second guess the legislature in this regard and remedy this perceived oversight). "Were we to carve out an exception to the privilege whenever it inhibited the fact-finding process, it would quickly become eviscerated" (*Dillenbeck v Hess, supra* at 289; *see Monica W. v Milevoi,* 252 AD2d 260, 262-263 [1999]). As in the present case, petitioners are often able to establish an AIP's need for a guardian through non-expert and non-privileged testimony (*see Matter of Rosa B.-S., supra; Matter of Harriet R., supra*). The court should not weaken the physician-patient privilege simply to ease the evidentiary burden on a petitioner attempting to provide unwanted assistance to an AIP. Accordingly, the testimony of Dr. Stern should not have been admitted or considered by the Supreme Court.