## 43493. NIXON v. THE STATE.
(347 SE2d 592)

GREGORY, Justice.

Vann Leon Nixon was convicted of the unlawful sale of a non-controlled substance and sentenced to ten years in prison. His appeal is before this court on a constitutional challenge to OCGA § 16-13-30.1 (a) (1) (C). See Georgia Constitution, Art. VI, Sec. VI, Par. II (2).

The evidence at trial showed that on March 8, 1985, Chris Dorsey, a GBI agent, and Terry Turner of the Grady County Sheriff's Department, were investigating recent burglaries in Grady County. While stopped at a stop sign a man unknown to them approached their car and informed agent Dorsey that three white men and one black man were riding in a white Falcon in the vicinity, and that the black man was selling drugs. Within two or three minutes of receiving this information, the officers observed the described vehicle[1] pull next to the curb by a local park. As the black man opened the right rear door of the car to exit, the officers turned on the blue light of their vehicle to detain the car. The black man got back in the car. Agent Dorsey recognized the black passenger as Vann Nixon, a convicted felon on parole, and asked Nixon to exit the car. As Dorsey patted Nixon down, Nixon stated, "You can't arrest me. It's not real drugs." The officer then found two small blocks of a substance appearing to be hashish and four handrolled cigarettes on Nixon's person. A small block similar to those found on Nixon was discovered on one of the other passengers. All four men were placed under arrest.[2]

At trial the three white males testified that on the day of their arrest they encountered Nixon at the Pac-A-Sac store in Grady County. Nixon inquired whether they wanted to buy some "hash." They agreed and Nixon got in their car. They testified that they paid Nixon $15 for one block of the substance he represented to be hashish. A forensic drug identification expert from the State Crime Lab

---

[1] It was later determined the car is a white Maverick.
[2] The three white males ranged in age from 16 to 19 years. They were not charged with the commission of a crime.

testified that the three blocks and four cigarettes found in the search tested negative for the presence of marijuana and hashish. Nixon testified in his own behalf that he cooked eggs and sage together to produce the substance which he stated "will give a five minute high." Nixon testified he smoked this substance for his own pleasure. Nixon denied selling or giving any of this mixture to his three companions and testified they were giving him a ride to the park when stopped by police.

1. Nixon was arrested on Friday, March 8, 1985, and then taken before a magistrate on March 11, 1985. At this time the magistrate denied Nixon bond on the ground that the offense with which he was charged was bailable only before the superior court. The State concedes, however, that the magistrate was authorized to set bail for Nixon's offense. OCGA § 17-6-1 (a). This error was brought to the magistrate's attention by Nixon's parole officer on August 9, 1985. The magistrate immediately held a hearing and set bail at $5,000, but Nixon did not post a bond.

Nixon argues, without citation of authority, that the failure of the magistrate to initially set a bond requires that the indictment against him be quashed. We do not agree. The quashing of the indictment is not an appropriate remedy[3] for any error there may have been in the initial denial of bond. Compare *Burke v. State*, 234 Ga. 512 (5) (216 SE2d 812) (1975).[4]

2. The petitioner maintains that officers lacked probable cause to search his person, and therefore the non-controlled substance found on him should have been suppressed. We do not agree. The evidence showed that the officers received information that three white males and one black male, travelling in a white car in the immediate vicinity of the officers were conducting a drug transaction. Within "two or three" minutes the officers located the described car and passengers. Agent Dorsey recognized Nixon as a convicted felon about whom he had earlier received "unconfirmed information" of drug dealing.

"While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of

---

[3] The State contends that OCGA § 17-6-1 (c), which provides that persons charged with crimes not entitled to bail under OCGA § 17-6-1 (b) may appeal to the superior court, also governs the relief for those denied bail for bailable offenses under OCGA § 17-6-1 (a). Such an interpretation is not clear from our reading of the statute. If the legislature intended such a meaning, it seems an amendment clarifying the statute is in order.

[4] Nixon peripherally argues that under OCGA § 17-7-50, he was entitled to have the grand jury indict him within 90 days of confinement once bail had been denied. Nixon was arrested on March 8, 1985 and indicted on August 15, 1985. He maintains that the failure to timely indict him requires that the indictment be quashed. This issue is directly controlled by *Burke v. State*, supra.

criminal activity is the standard of probable cause.' [Cits.]" *Illinois v. Gates*, 462 U. S. 213, 235 (103 SC 2317, 76 LE2d 527) (1983). Probable cause deals "with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879) (1949). "The test of probable cause is whether it would justify a person of reasonable caution in believing that an offense has been or is being committed, and this requires probability, which is less than a certainty but more than mere suspicion or possibility." *Lewis v. State*, 255 Ga. 101, 104 (335 SE2d 560) (1985). We find that under the totality of circumstances in this case, the officers had probable cause to believe Nixon was engaged in the commission of a drug-related offense and were authorized to search his person. *Illinois v. Gates*, supra.

3. Nixon argues that the trial court erred in refusing to strike OCGA § 16-13-30.1 (a) (1) (C) as unconstitutionally vague and overbroad. This Code section provides, "It is unlawful for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon . . . . : (C) The express or implied representation that the substance has essentially the same pharmacological action or effect as a controlled substance." The trial court denied Nixon's motion finding that Nixon was not indicted under this Code section, but under[5] OCGA § 16-13-30.1 (a) (1) (A) which provides, "It is unlawful for any person knowingly to manufacture, deliver, distribute, dispense, possess with the intent to distribute, or sell a noncontrolled substance upon . . . : (A) the express or implied representation that the substance is a narcotic or nonnarcotic controlled substance."

It is clear to us that Nixon was not indicted under the challenged statute. See fn. 5, supra. Nixon could not have been convicted under OCGA § 16-13-30.1 (a) (1) (C) because "[i]t is axiomatic that a conviction upon a charge not made . . . constitutes a denial of due process." *Jackson v. Virginia*, 443 U. S. 307, 314 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State*, 254 Ga. 435, 438 (330 SE2d 567) (1985). No evidence was presented at trial which showed that Nixon expressly or impliedly represented that the substance sold has the same pharmacological effect as a controlled substance. OCGA § 16-13-30.1 (a) (1) (C). Rather, the evidence showed that Nixon sold the substance in question, expressly representing it to be hashish, a con-

---

[5] Nixon was indicted for "sell[ing] a non-controlled substance upon the express and implied representation that the substance was a controlled substance, to wit: a Tetrahydrocannabinal sample not containing plant material exhibiting the external morphological features of the plant cannabis, to wit: hashish."

trolled substance. OCGA § 16-13-30.1 (a) (1) (A).

We do not undertake to reach the merits of Nixon's constitutional claim. The language of OCGA § 16-13-30.1 (a) (1) expresses the intent of the legislature that subparts (A), (B) and (C) constitute crimes independent and distinct from one another. Where one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and preserve the remainder if the remaining portion of the Act accomplishes the purpose the legislature intended. *Board of Trustees v. Christy*, 246 Ga. 553 (1) (272 SE2d 288) (1980); *City Council of Augusta v. Mangelly*, 243 Ga. 358 (254 SE2d 315) (1979). Even if we were to reach the issue and declare OCGA § 16-13-30.1 (a) (1) (C) unconstitutional, it would be severable from the remaining portions of the statute. Nixon's conviction under OCGA § 16-13-30.1 (a) (1) (A) would stand. Thus, a declaration by this court that OCGA § 16-13-30.1 (a) (1) (C) is unconstitutional would be of no benefit to Nixon.

4. We conclude that a rational trier of fact could have found Nixon guilty beyond a reasonable doubt of the crime charged. *Jackson v. Virginia*, supra.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED SEPTEMBER 3, 1986.

*Porter & Lehman, Thomas L. Lehman,* for appellant.
*J. Brown Moseley, District Attorney,* for appellee.