297 Ga. 306
FINAL COPY

S14G1780.  TURNER v. GEORGIA RIVER NETWORK et al.
S14G1781.  GRADY COUNTY BOARD OF COMMISSIONERS v.
GEORGIA RIVER NETWORK et al.

BENHAM, Justice.

This appeal arises from our grant of petitions for certiorari filed by appellants Judson H. Turner, the Director of the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources (DNR), and the Grady County Board of Commissioners (Grady County), requesting our review of the Court of Appeals's decision in Georgia River Network v. Turner, 328 Ga. App. 381 (762 SE2d 123) (2014).  Appellees Georgia River Network and American Rivers are both non-profit organizations.  The relevant facts show that in 2010, Grady County received federal approval to construct a 960-acre fishing lake.[1]  The project also entailed building a large dam and inundating 129 acres of wetlands and nine miles of streams to create the lake.  To proceed with the project, Grady County was required to apply for a buffer variance through the EPD in order to disturb the stream waters that would be affected by the project.

---

[1] See Georgia River Network v. Turner, supra, 328 Ga. App. at 383-384 for a full recitation of the facts.

Appellees challenged the variance, arguing that Grady County's application was deficient because it failed to address buffers for the wetlands that would also be affected by the project. The Director granted the variance over appellees' objections. In a separate letter, the EPD advised appellees that wetlands did not require buffers because they generally lack wrested vegetation and were not subject to a variance request. Appellees sought review of the Director's decision from an administrative law judge (ALJ) in the Office of State Administrative Hearings. The ALJ overturned the variance, reasoning that OCGA § 12-7-6 (b) (15) (A) of the Erosion and Sedimentation Act requires a buffer for all state waters, including wetlands. The Director and Grady County filed appeals challenging the ALJ's decision in the superior courts of Fulton County and Grady County, respectively. On the substantive issue of the construction and interpretation of OCGA § 12-7-6 (b) (15) (A),[2] both trial courts determined that the Director's construction of the statute was correct and that the buffer requirement only applies to state waters that have wrested vegetation.

---

[2] There were also issues concerning whether the appellees had a statutory right and standing to seek review of the Director's decision, but those issues are not before us in this appeal.

2

Accordingly, the trial courts reversed the judgment of the ALJ. Appellees then appealed to the Court of Appeals.

OCGA § 12-7-6 (b) (15) (A) states as follows: "There is established a 25 foot buffer along the banks of all state waters, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action. . . ." Citing to principles of statutory construction, the Court of Appeals concluded that this buffer requirement applies to state waters[3] whether or not their banks have wrested vegetation. The Court of Appeals explained that the language regarding how the buffer is to be measured did not create an additional exception to OCGA § 12-7-6 (b) (15) (A),[4] but merely explained the location of the buffer. 328 Ga. App. at 391. In addition, the Court of Appeals reasoned that the statute was internally inconsistent and that its finding that the buffer applied to all state waters, without regard to the existence of wrested vegetation, would avoid any absurd or unintended result contrary to the legislature's purpose in enacting the legislation. Id. at 392. Based on this analysis, the Court of

---

[3] The Court of Appeals noted that the parties did not dispute that "wetlands" fall within the statutory definition of "state waters" and stated that it would not reach that issue as it had not been fully litigated. Id. at 390, n. 4. We likewise do not address this issue on appeal.

[4] There are six statutory exceptions to the buffer requirement which appear at OCGA § 12-7-6 (b) (15) (A) (i)-(vi). These exceptions are not at issue in this appeal.

3

Appeals found the ALJ had not erred and reversed the decisions of the trial courts. We granted certiorari to determine whether the Court of Appeals erred in its construction of OCGA § 12-7-6 (b) (15) (A). Because we find that it did err, its judgment is reversed.

> The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly (OCGA § 1-3-1), and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to [e]nsure that the legislature meant something else. Absent clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings.

(Citations and punctuation omitted.) Judicial Council of Georgia v. Brown & Gallo, LLC, 288 Ga. 294, 296-297 (702 SE2d 894) (2010). Here, the Court of Appeals erred because the literal language of the statute does not require a buffer for state waters alongside banks without wrested vegetation. The language at issue states in pertinent part: "There is established a 25 foot buffer along the banks of all state waters, as measured horizontally from the point where vegetation has been wrested. . . ." Had the legislature placed a period after the word "waters" rather than a comma and had gone no further, then there would be no other conclusion but that buffers are established along the banks

4

of all state waters, regardless of the existence of wrested vegetation. But that is not what the legislature did. By adding the phrase "as measured horizontally from the point where vegetation has been wrested," the General Assembly expressly defined how the buffer "is established." Since the legislature offered no other method for the buffer to be established but for measuring it horizontally from the point of wrested vegetation, the buffer necessarily cannot be applied to state waters that are adjacent to banks without wrested vegetation. No further interpretation or analysis is required.

Our plain reading of OCGA § 12-7-6 (b) (15) (A) is in keeping with longstanding tenets of statutory construction: "*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded). . . ." See Hammock v. State, 277 Ga. 612 (3) (592 SE2d 415) (2004). The courts cannot construe OCGA § 12-7-6 (b) (15) (A) to force an outcome that the legislature did not expressly authorize. "The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the

5

legislature. We can not add a line to the law." (Citation and punctuation omitted.) Allen v. Wright, 282 Ga. 9 (1) (644 SE2d 814) (2007). OCGA § 12-7-6 (b) (15) (A) simply does not provide for the establishment of a buffer for state waters that are adjacent to banks without wrested vegetation.[5] In order for the buffer requirement to apply to state waters alongside banks without wrested vegetation, the legislature would need to take action to amend the statute.

[5] The dissent suggests that it would be absurd to attribute to OCGA § 12-7-6 (b) (15) (A) its plain meaning because that would leave state waters with no vegetation along their banks unprotected. The dissent is wrong in two respects. First, it appears that the principal purpose of the buffer requirement is to protect state waters in a specific way – by protecting whatever natural vegetation grows alongside state waters. See OCGA § 12-7-3 (2) (defining "buffer" as "the area of land immediately adjacent to the banks of state waters in its *natural state of vegetation, which facilitates the protection of water quality and aquatic habitat*" (emphasis supplied)). See also OCGA § 12-7-6 (b) (15) (B) ("a buffer shall remain in its natural, undisturbed state of vegetation until all land-disturbing activities on the construction site are completed," and after "the final stabilization of the site is achieved, a buffer may be thinned or trimmed of vegetation as long as a protective vegetative cover remains to protect water quality and aquatic habitat and a natural canopy is left in sufficient quantity to keep shade on the stream bed"). Where there is no natural vegetation, there is nothing to preserve, and so the decision of the General Assembly to limit the buffer requirements to state waters with wrested vegetation is not absurd.

Secondly, the dissent fails to consider the fact that OCGA § 12-7-6 (b) (15) (A) is not the only means by which the EPD protects state waters both with and without wrested vegetation. The establishment of buffers for state waters alongside banks with wrested vegetation is only *one* of many tools or "best management practices," available to accomplish the intent of the Erosion and Sedimentation Act as stated in OCGA § 12-7-2. See, e.g., OCGA § 12-7-6 (a) (1), 12-7-6 (b) (1)-(14). See also *Manual for Erosion and Sediment Control in Georgia*, Georgia Soil and Water Conservation Commission (6th ed. 2014) (manual is specifically referenced by OCGA § 12-7-6 (b)). There is no basis for the courts to extrapolate the application of OCGA § 12-7-6 (b) (15) (A) beyond its literal terms based on an incorrect assumption that state waters without wrested vegetation are left without "some level of protection" from land-disturbing activities because the establishment of a buffer is not required under one subsection of the Act. Moreover, the courts are not equipped to decide what the "best management practices" are for wetlands, trout streams, or any other state waters.

Accordingly, the judgment of the Court of Appeals as regards its construction of the statute is reversed.[6]

Judgment reversed. Thompson, C. J., Hines, P. J., Hunstein and Blackwell, JJ., and Chief Judge H. Gibbs Flanders concur. Melton, J., dissents. Nahmias, J., disqualified.

MELTON, Justice, dissenting.

As OCGA § 12-7-6 (b) (15) (A) is currently written, there is no guidance as to the measurement of a buffer zone for state waters lacking wrested vegetation. This raises an ambiguity, and, in the presence of such an ambiguity, this Court must give strong deference to the interpretation of the statute made by the Director of the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources. In this case, however, the EPD's interpretation that OCGA § 12-7-6 (b) (15) (A) requires no buffer at all for state

---

[6] Our review is limited to Division 3 of the Court of Appeals's decision. We express no opinion regarding the substantive decisions made in Division 2 of the Court of Appeals's decision.

7

waters without wrested vegetation is unreasonable, given the explicit purpose of the statute to lend some level of protection to *all* state waters. As a result, I must respectfully dissent.

The Erosion and Sedimentation Act of 1975 was intended to protect state waters and related wildlife and vegetation from the detrimental effects of sediment and erosion caused by land disturbing activities. OCGA § 12-7-2 plainly states:

> It is found that soil erosion and sediment deposition onto lands and into waters within the watersheds of this state are occurring as a result of widespread failure to apply proper soil erosion and sedimentation control practices in land clearing, soil movement, and construction activities and that such erosion and sediment deposition result in pollution of state waters and damage to domestic, agricultural, recreational, fish and wildlife, and other resource uses. It is therefore declared to be the policy of this state and the intent of this chapter to strengthen and extend the present erosion and sediment control activities and programs of this state and to provide for the establishment and implementation of a state-wide comprehensive soil erosion and sediment control program to conserve and protect the land, water, air, and other resources of this state.

For this reason, the Legislature established buffer zones to protect state waters from land disturbing activities in their proximity. OCGA § 12-7-3 (2) defines a "buffer" as "the area of land *immediately adjacent to the banks* of state waters in its natural state of vegetation, which facilitates the *protection of water*

*quality and aquatic habitat*."[7] (Emphasis supplied.) The particular buffer at issue in this matter is set forth in OCGA § 12-7-6 (b) (15) (A), which requires "a 25 foot buffer *along the banks of all state waters*, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action." (Emphasis supplied.) The problem with this statute, however, is that it does not provide a measurement for a buffer zone along the banks of state waters without wrested vegetation. As a result, the EPD is called upon to interpret the statute in a way to effectuate its underlying meaning and purpose in the context where no wrested vegetation exists.

---

[7] In footnote 5, the majority opinion argues that the statute is intended to protect the natural vegetation growing along state waters. It later states: "Where there is no natural vegetation, there is nothing to preserve, and so the decision of the General Assembly to limit the buffer requirements to state waters with wrested vegetation is not absurd." This argument is logically untenable, as it rests on the idea that there will never be any natural vegetation along any state waters without wrested vegetation. The absence of wrested vegetation, or vegetation which has been pulled away from the banks by flowing water, does not mean that there is no natural vegetation left. To the contrary, where there is no wresting action, the natural vegetation remains, likely growing from the water and up the banks. Even if the purpose of the statute is to protect the natural vegetation growing along state waters, the absence of wrested vegetation, which would suggest conditions appropriate for the continued presence of natural vegetation, would not be an appropriate reason to have no buffer at all. To the contrary, it would make it even more unreasonable to resort to an interpretation that provides no buffer to protect natural vegetation.

In the presence of such an overt ambiguity, strong deference must be given to the interpretation of the statute given by the appropriate administrative agency. As set forth in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U. S. 837, 844 (II) (104 SCt 2778, 81 LE2d 694) (1984):

> The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

(Citations and punctuation omitted.)

With this in mind, deference must be given to the determination by the Director of the EPD that state waters without wrested vegetation are entitled to no buffer at all. The required deference, however, is strong, but not absolute. Here, the EPD's extreme interpretation of OCGA § 12-7-6 (b) (15) (A) is unreasonable and manifestly contrary to the statute, which is intended to "protect water quality and aquatic habitat" of all state waters. Providing no

3

buffer at all to state waters without sufficient wrested vegetation works to the detriment of the statutory purpose, and, as such, cannot be considered reasonable.

The arbitrariness of the EPD's interpretation becomes even more evident when one considers OCGA § 12-7-6 (b) (16), which provides, in part: "[t]here is established a 50 foot buffer, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action, along the banks of any state waters classified as 'trout streams' pursuant to Article 2 of Chapter 5 of this title." Under the EPD's interpretation, trout would be protected based solely on whether they were swimming in a stream with wrested vegetation — a distinction that makes no sense and one which the Legislature would not have intended.

Accordingly, though I do believe that the EPD may reasonably interpret the ambiguity present in OCGA § 12-7-6 (b) (15) (A),[8] that interpretation must

---

[8] The majority mischaracterizes this plain statement by arguing that this opinion proposes that the courts should make decisions regarding water management practices and the size of buffer zones. As plainly stated, this opinion leaves those decisions to the expertise of the EPD. However, where an administrative agency makes an unreasonable interpretation of a vague statute, as in this case, it is the duty of the courts to require the EPD to reassess its

4

extend at least some level of buffer protection to state waters without wrested vegetation. Otherwise, the purpose of the Land Erosion Act to protect water quality and aquatic habitat for all state waters is inappropriately undermined.

Decided June 15, 2015.

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 381.

Samuel S. Olens, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, James D. Coots, Senior Assistant Attorneys General, Britt C. Grant, Assistant Attorney General, for Turner.

William W. Sapp, Nathaniel H. Hunt; Charles M. Cork III, for Georgia River Network.

Cook, Noell, Tolley & Bates, Edward D. Tolley, Devin H. Smith; Kevin S. Cauley, for Grady County Board of Commissioners.

King & Spalding, Patricia T. Barmeyer, Lewis B. Jones; Stack & Associates, Donald D. J. Stack, Kevin H. Jeselnik, amici curiae.

interpretation.

5