**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 28, 2023

# In the Court of Appeals of Georgia

A23A0547. GREEN et al. v. PINNIX et al.

PIPKIN, Judge.

In this medical malpractice action, the trial court determined that counsel for the Defendants violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Based on this alleged violation, the trial court imposed sanctions, which included limiting the Defendants' use of certain evidence at trial. We granted the Defendants' application for interlocutory appeal to consider whether a HIPAA violation occurred. Because we conclude that there was no HIPAA violation, we reverse the trial court's ruling.

The relevant facts show that Dr. Andrew Green is employed by Northeast Georgia Physicians Group (NGPG). On March 20, 2018, Dr. Green performed surgery on Stephanie Karen Pinnix. During surgery, Green suspected that he had

perforated Pinnix's bowel, but he was unable to find the injury. He admitted Pinnix to the hospital for observation and consulted with Dr. Cecil Brown, a trauma surgeon also with NGPG. When Pinnix showed signs of infection, Dr. Brown decided to operate; he discovered and repaired the bowel leak. Pinnix, however, apparently continues to suffer complications from the perforation.

Pinnix filed suit against multiple defendants, including Green, NGPG, Northeast Georgia Medical Center, Inc., and Northeast Georgia Health System., Inc., (collectively, "the Defendants").[1] In connection with the lawsuit, Pinnix sought to depose Dr. Brown. After receiving the notice of deposition, Dr. Brown contacted the hospital's legal department. The notice was apparently passed along to Scott Bailey, lead counsel for the Defendants who, in turn, contacted Pinnix's counsel to schedule the deposition. Bailey sent an email informing Pinnix's counsel that "Dr. Brown is an NGPG employee and therefore is our client." Multiple emails were exchanged regarding the scheduling of the deposition. At the deposition, plaintiff's counsel almost immediately began questioning Dr. Brown about his conversations with Bailey and his preparation for the deposition. Dr. Brown indicated that he had spoken on the

---

[1] Pinnix's husband, Octavio Ortega, also asserted a loss of consortium claim. For ease of reading, we refer solely to Pinnix.

phone with Bailey and was provided a link for "nearly 1,500" pages of medical records of which he had read about 300.

Pinnix subsequently filed a "Motion for Severe Sanctions Involving Defendants' Counsel's Multiple Ex Parte Discussions With Plaintiff's Non-Party Treating Physician." According to the motion, Bailey "materially violated HIPAA when he held multiple ex parte discussions with [Pinnix's] non-party treating doctor, Dr. Brown."[2] Underpinning Pinnix's argument was her contention that Bailey was not authorized to communicate with Dr. Brown as an attorney because Bailey did not represent Dr. Brown. Pinnix moved for the trial court to strike the Defendants' answer and preclude them from contesting liability at trial.[3]

The trial court granted the motion in part. In its order, the trial court determined that, under HIPAA, Bailey should have obtained a qualified protective order before attempting to speak to Dr. Brown. The trial court next analyzed the rules governing

[2] Pinnix also argued below that the communications between Bailey and Dr. Brown violated Georgia's independent physician-patient privilege and constituted a criminal violation of OCGA § 16-10-93, which precludes influencing a witness. The trial court rejected these arguments.

[3] Pinnix's motion for sanctions invoked the trial court's inherent power under OCGA § 15-1-3 (4) "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto[.]"

3

attorney-client relationships to ascertain whether Bailey represented Dr. Brown. The trial court found that although Bailey may have believed he was representing Dr. Brown, Dr. Brown did not initially believe he was being represented by Bailey. Thus, the trial court found that the attorney-client relationship did not exist until the middle of the deposition, which rendered Bailey's prior conversations with Dr. Brown improper. The trial court rejected the Defendants' argument that communications between Bailey and Dr. Brown could not violate HIPAA because Dr. Brown was employed by the Defendants. The trial court agreed that sanctions were appropriate, and it limited the scope of Dr. Brown's trial testimony and crafted the following jury instruction to be read in the event Dr. Brown testified at trial:

> During the course of collecting evidence for this trial, Defense Counsel interviewed Dr. Brown without Plaintiffs or Plaintiffs' Counsel being present. This was improper under Georgia law. The fact that this interview occurred may or may not have affected Dr. Brown's testimony or that of any other related witness. This issue of potential credibility is solely for you, as the jury, to decide.

The trial court also awarded attorney fees and costs of litigation against the Defendants in an amount to be determined at a future hearing. Following the grant of

4

an interlocutory application, the Defendants appeal this ruling, arguing that the trial court erred by finding a HIPAA violation. We agree.

"Georgia law is clear that a plaintiff waives [her] right to privacy with regard to medical records that are relevant to a medical condition the plaintiff placed in issue in a civil or criminal proceeding." *Moreland v. Austin*, 284 Ga. 730, 732 (670 SE2d 68) (2008); see also OCGA § 24-12-1 (a patient waives privacy over medical records "to the extent that the patient places . . . her care and treatment or the nature and extent of . . . her injuries at issue in any judicial proceeding"). Georgia law is preempted, however, to the extent it conflicts with HIPAA. See *Allen v. Wright*, 282 Ga. 9, 11 (1) (644 SE2d 814) (2007). In that vein, the Supreme Court has previously held that HIPAA preempts Georgia's privacy waiver law and, therefore, precludes defense attorneys from engaging in informal ex parte communications with a plaintiff's prior treating physicians without first complying with HIPAA's procedural requirements. See *Moreland*, 284 Ga. at 732-734; see also 45 CFR § 164.512 (e) (procedural requirements). As addressed more fully below, the issues presented in this case differ from those in *Moreland*. Here, the question is whether HIPAA bars defense counsel from communicating with the plaintiff's subsequent treating physician who works with the defendant doctor in the same defendant practice at the

5

same defendant hospital, all of whom defense counsel represents. In short, the answer is "no."

"[W]hen interpreting a statute[,] courts must give meaning and intent to all words, bearing in mind that where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." (Citation and punctuation omitted). *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012). Accordingly, our discussion of HIPAA starts with the Act itself, which applies to (1) health plans, (2) health care clearinghouses, and (3) healthcare providers who transmit records electronically. See 45 CFR § 164.104 (a). "The intent of HIPAA is to ensure the integrity and confidentiality of patients' information and to protect against unauthorized uses or disclosures of the information." (Citation and punctuation omitted.) *Allen*, 282 Ga. at 11 (1). HIPAA defines a disclosure as "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information." 45 CFR § 160.103.

Under HIPAA, "[a] covered entity or business associate may not use or disclose protected health information" except as permitted "[f]or treatment, payment, or health care operations as permitted by and in compliance with § 164.506." 45 CFR §

6

164.502 (a) (ii). Health care operations include "conducting or arranging for . . . legal services[.]" 45 CFR § 164.501. Furthermore, under 45 CFR § 164.506 (c) (5), "[a] covered entity that participates in an organized health care arrangement may disclose protected health information about an individual to other participants in the organized health care arrangement for any health care operations activities of the organized health care arrangement." An organized health care arrangement includes "[a] clinically integrated care setting in which individuals typically receive health care from more than one health care provider." 45 CFR § 160.103.

With these principles in mind, we turn to the facts of this case. As noted by the trial court, Bailey provided nearly 1,500 pages of medical records to Dr. Brown without first obtaining permission from Pinnix. Based upon the plain language of the relevant portions of HIPAA, this transmission of documents cannot constitute a HIPAA violation because there was no "disclosure" within the meaning of HIPAA. Both Dr. Green and Dr. Brown are employed by NGPG, which owns the medical records at issue. Under HIPAA, a provider has access to its own records, and it may provide protected health information about a patient to other doctors *within* the

organization in order to "conduct" or "arrange for" legal services.[4] See 45 CFR §§ 160.103, 164.501. The very purpose of transmitting the medical documents to Dr. Brown was to prepare him for his deposition in this case.

Likewise, Bailey's communication with Dr. Brown prior to his deposition does not constitute a HIPAA violation. As Bailey was acting on behalf of NGPG, any conversation between the two did not qualify as a "disclosure" because the conversation did not concern "the release, transfer, provision of access to, or divulging in any manner of information *outside the entity holding the information*." (Emphasis supplied.) 45 CFR § 160.103. This pre-deposition conversation also falls squarely within the exception permitting the disclosure of protected health information to other doctors in an organized health care arrangement for arranging or conducting legal services for the organized health care arrangement. See 45 CFR §§ 164.502 (a) (ii), 164.506 (c) (5).

*Moreland* does not require a different result. In that case, the Supreme Court concluded that, under HIPAA, a defense lawyer could not communicate with a

---

[4] What is more, it is undisputed that Dr. Green consulted with Dr. Brown post-surgery, during which Dr. Green informed Dr. Brown that he may have perforated Pinnix's bowel. Based upon this consultation, Dr. Brown kept Pinnix under observation and subsequently operated on her to address the bowel injury. In other words, Dr. Brown was already privy to Pinnix's medical history relevant to this case.

plaintiff's prior treating physicians without first obtaining either a valid authorization from the plaintiff or a court order. *Moreland*, 284 Ga. at 733-734. In *Moreland*, however, there was no suggestion that the prior treating physicians were part of the same practice as the defendant doctor. Thus, the prior treating physicians violated HIPAA by communicating with defense counsel. Furthermore, in the case at bar, there is no suggestion that Dr. Brown was a *prior* treating physician. Rather, his treatment of Pinnix was directly relevant to the issues at trial. We thus find *Moreland* inapposite.

It seems that Pinnix's true complaint is that, because Bailey represents Dr. Green, he should not have been the attorney handling Dr. Brown's deposition. She claims that "[t]here is an inherent conflict of interest[.]"[5]

> A conflict of interest motion or objection to counsel must be timely raised, and a motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. A failure to make a reasonably prompt motion to disqualify may result in the conflict being waived.

---

[5] In its order, the trial court recognized a potential conflict and ordered Bailey to put on the record Dr. Brown's waiver of any conflict.

9

(Citations and punctuation omitted). *Head v. CSX Transp.*, 259 Ga. App. 396, 398 (577 SE2d 12) (2003). Here, Pinnix has not moved to disqualify Bailey from representing Dr. Brown. Accordingly, Pinnix has waived this argument on appeal.

*Judgment reversed. Rickman, C. J., and Dillard, P. J., concur fully and specially.*

A23A0547. GREEN et al v. PINNIX et al.

DILLARD, Presiding Judge, concurring fully and specially.

I fully concur in the majority's judgment, but I do so with the understanding that when the majority references legislative "intent" in its opinion, it does so to emphasize the *codified intent* reflected by the relevant statutory text. Even so, I write separately as a reminder that what a legislative body "intends" to convey in a statute only matters to the extent its "intention" is actually reflected in the plain text of that statute.[1] Judges are neither seers nor black-robed philosophers. We interpret the law

---

[1] *See Merritt v. State*, 286 Ga. 650 656 (690 SE2d 835) (2010) (Nahmias, J., concurring specially) (explaining that "when judges start discussing not the meaning

to the best of our ability based on the relevant language, context, and any applicable

canons of statutory construction.[2] Intentions detached from a textual foundation are

of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, and the need to make sure the law does not cause 'unreasonable consequences,' [they venture] into dangerously undemocratic, unfair, and impractical territory"); *Beasley v. Ga. Dep't of Corr.*, 360 Ga. App. 33, 41 (3) (a) (861 SE2d 106) (2021) (noting that "[a]ppellate courts must discern the 'intent' of the legislature through the words contained in enacted statutes, and nothing more."); *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 55 (1) (806 SE2d 215) (2017) (noting that "we are charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies), as well as with faithfully following the precedents established by higher courts." (punctuation omitted)); *Bellsouth Telecomm., LLC v. Cobb Cty.*, 342 Ga. App. 323, 335 (1) n.16 (802 SE2d 686) (2017), *vacated on other grounds by Bellsouth Telecommunications, LLC v. Cobb Cty.*, 352 Ga. App. 110 (834 SE2d 124 (2019) (Dillard, P. J., concurring fully and specially) ("In my view, our appellate courts should stop referencing altogether the ethereal fiction of 'legislative intent' in the context of statutory interpretation. A judge should not care about what any legislator intended but did not expressly provide for in the statutory text."); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) (noting that "[c]ourts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning" (punctuation omitted)); *In re Whittle*, 339 Ga. App. 83, 88 (1) (793 SE2d 123) (2016) (noting that if an appellant's policy arguments are ultimately to prevail, they should be made to our General Assembly, not an appellate court).

[2] *See Georgia Lottery Corp. v. Tabletop Media, LLC*, 346 Ga. App. 498, 507 (816 SE2d 438) (2018) (Dillard, C.J., concurring fully and specially) ("Let us put to rest, then, the fanciful notion that judges are somehow able to discern the collective intent of a legislative body. Judges are not in the business of divining unexpressed legislative intent, nor are we capable of doing so with any reasonable degree of accuracy . . . . Judges are trained to interpret the meaning of the words expressly

illusory and a deeply troubling source of fascination for far too many jurists—present

company is, of course, excluded.[3]

I am authorized to state Chief Judge Rickman joins this concurrence.

---

ratified by the people or enacted by their representatives in a manner consistent with longstanding canons of construction. Thus, when judges speak as if they are engaging in some mystical search for the legislature's unexpressed intent, they create an impression that is both misleading and squarely at odds with the judicial duty. It is time to state plainly what is already manifestly true: What legislators intend but do not expressly provide for in the text of a statute is meaningless").

[3] *See Conroy v. Aniskoff*, 507 U. S. 511, 519 (113 SCt 1562, 123 LEd2d 229) (1993) (Scalia, J., concurring) ("We are governed by laws, not by the intentions of legislators."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTEPRETATION OF LEGAL TEXTS 375 (1st ed. 2012) (noting that judges should only be concerned with what laws actually say, "not by what the people who drafted the laws intended").